Judgment affirmed.

---

## JU JEE BO v. NAGLE, Commissioner of Immigration.

Circuit Court of Appeals, Ninth Circuit.  October 24, 1927.

### No. 5164.

Aliens �köé32(18)—Order denying entry of Chinese woman, based on her own testimony, held not reviewable.

Where entry of Chinese woman was denied, the order of exclusion being based on testimony given by the applicant herself in regard to her relatives, the order was not reviewable by the courts; it being based on competent testimony.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California; George M. Bourquin, Judge.

Petition of Ju Jee Bo against John D. Nagle, Commissioner of Immigration for the Port of San Francisco, for a writ of habeas corpus. Denied.

George A. McGowan, of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. This is an appeal from an order denying a petition for a writ of habeas corpus. The only question involved is the relationship of the appellant to an American citizen. It appears from the record that the appellant arrived at the port of San Francisco from China on June 30, 1926, accompanied by an alleged brother, an alleged uncle, and his two sons. Numerous hearings were had before the Board of Special Inquiry, the last of which occurred on October 1, 1926. At that hearing, the appellant gave certain testimony, and was then asked if she had any additional statement to make. In response to the inquiry, she stated in substance that she knew that she had no mother, and that the statements that she had theretofore made to the various officers she

had been forced to make; that she knew that she had been sold by her aunt, living in Sun Woey City, and that the officers appreciated the situation in which she was placed; that her father died when she was a baby, and that she did not know his name, nor did she know how she was given into the care of the woman at Sun Woey City; that she did not remember seeing her mother; that a man whom she was told was her grandfather coached her from a lengthy sheet of paper, and that she had answered the questions from what he had taught her; that she first met the alleged brother on April 12, 1926, and that she met the two alleged cousins on the same day at their home in the Ng Fook village; that she was taken to that place by her aunt in Sun Woey City, and was told to make herself acquainted with the house; that she was the only child of her parents; that one Ju Bing Hong paid her transportation to the United States, and that she had an agreement with him that, if she was sold and led into a life of slavery and prostitution, she would inform the immigration service. In the course of her statement, she inquired if the man who claimed to be her father was aware that she was testifying that day, that the officers might know the reason why she asked, and that if he was questioned she desired that he be given as little information as possible. She further stated that she understood the questions asked, that her statement was true and was voluntarily made, and that her true name in China was Ju Dai Moey.

Upon the record as made, the other four Chinese to whom we have referred were landed, but the application of the appellant for admission was denied, and an appeal was taken. Some days thereafter, the attorney for the appellant addressed a letter to the Commissioner of Immigration, asking that he be accorded a personal interview with the appellant to enable him to prepare a brief for the department. On the following day, at a second interview, the same attorney took a statement from her, through an interpreter, in which she denied categorically the statements alleged to have been made by her at the last hearing on October 1. Affidavits of the alleged brother and the two alleged cousins were filed at the same time. In these affidavits the witnesses claimed that they had been importuned at various times by interpreters in the immigration service to disclaim or deny their relationship to the appellant, but that they had persistently refused to do so, insisting at all times that she was related to them as claimed. The statement of the appellant and the last-mentioned affidavits were thereupon transmitted to the department with the record on appeal. There were likewise transmitted statements from the interpreters and various inspectors, denying generally the acts of misconduct charged against the interpreters. Upon this record the department concluded that the claimed relationship had not been established.

It seems almost unnecessary to say that, if the testimony as above set forth was given by the appellant as claimed, the decision of the department is supported by competent testimony. Nor can we see the materiality of either the affidavits filed by the alleged brother and cousins, nor the unsworn statement made by the appellant herself. Admitting for the moment that the interpreters were guilty of misconduct as claimed, it clearly appears from the affidavits that the appellant was not prejudiced thereby, because the witnesses at all times maintained that she was related to them as claimed, and so far as the appellant herself is concerned she does not claim that the statement she made before the Board of Special Inquiry was made under duress, or that she was induced to make it through false promises or deception. She simply denied the statement in toto. The question was, therefore, Did she make the statement, and was her testimony correctly transcribed in the record? The department has so found, and there is no conceivable ground upon which that ruling can be reviewed by the courts.

The order is therefore affirmed.